**\*Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                  :
SIAMAK MATT GHAFFARI,             :
                                  :
              Plaintiff,          :          Civil Action No. 06-931 (FLW)
                                  :
       v.                         :
                                  :                  **OPINION**
BENJAMIN M. HERN,                 :
                                  :
              Defendant.          :
_____  :

**WOLFSON, United States District Judge:**

Presently before the Court is a motion to summarily dismiss Plaintiff Siamak Matt Ghaffari's ("Plaintiff" or "Ghaffari") Complaint filed by Defendant Benjamin M. Hern ("Defendant" or "Hern"). This suit arises out of a loan allegedly given by Ghaffari to Hern pursuant to an oral agreement. Hern argues that summary judgment should be granted in his favor because Florida law applies to this case and thus, Ghaffari's claims are barred by the relevant statute of limitations. Alternatively, Hern argues if New Jersey law applies, summary judgment should be granted because Ghaffari allegedly breached the implied covenant of good faith and fair dealing. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

## I.    BACKGROUND

Plaintiff's original Complaint was filed on March 1, 2006.[1]   Plaintiff then filed an

_____
[1] Plaintiff failed to file a responsive statement of material facts as required by L.Civ.R. 56.1. ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating

Amended Complaint on February 24, 2009.  The Amended Complaint asserts claims of (1) fraud in the inducement; (2) unjust enrichment; (3) conversion; (4) breach of oral agreement; (5) coercion.  Amended Compl. ¶¶ 23-53.  In 2000, Hern, a venture capitalist, was the CEO of Global Access, a company located in Florida.  See Statement of Material Facts in Support of Defendant Benjamin M. Hern's Motion for Summary Judgment, ¶¶ 1, 4.  ("Df. Facts").  Ghaffari, who resided in Ohio, was a vice-president of Global Access.  Id. at ¶ 2.  Andrew Tasker ("Tasker") was a senior vice-president of Global Access.  Id. at ¶ 3.  Hern also owned, in part, a company based in Florida called Tampa Capital Group.  Id. at ¶ 5.  Robert Slider ("Slider") and Michelle Robinson ("Robinson") owned Virtual Impact Productions, Inc. ("VIP"), a company also located in Florida.  Id. at ¶¶ 6, 7.

Tampa Capital Group loaned $50,000 to VIP on October 13, 2000.  After a discussion between Ghaffari, Tasker and Hern about forming an LLC to invest in VIP, the parties drafted an unsigned letter of intent.  See Letter of Intent.  The letter stated, inter alia, (1) that Ghaffari, Tasker and Hern would form an LLC to invest in VIP; (2) that Hern would loan VIP $120,000, $20,000 of which would be through Hern forgiving $20,000 in debt owed by VIP to Tampa Capital Group.

On or about December 20, 2000, Ghaffari transferred $100,000 to Hern's bank account in New Jersey.  Df. Facts at ¶ 9.  The parties dispute why Ghaffari made this transfer.  Ghaffari

---

agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion").  As such, the Court deems the facts as stated in the Defendant's Statement of Undisputed Material Facts as undisputed.  Indeed, Plaintiff, in its Brief in Opposition to Motion for Summary Judgment avers "most of the matters set forth [in Df.. Facts] were correct."

maintains that the transfer was a short term loan to Hern for business purposes pursuant to an oral agreement.  In response, Hern avers that Ghaffari and Tasker requested Hern loan Ghaffari's $100,000 to VIP.  Hern Decl. ¶ 30.  Hern states that he offered to help Ghaffari and Tasker in the process of loaning money to VIP for no compensation because they both worked for Global Access and he was friendly with them.  Hern Decl. ¶¶ 11, 12.  The parties do not dispute that no writing exists to verify whether the $100,000 was a loan from Ghaffari to Hern.  Df. Facts ¶ 24.  Subsequently, using the $100,000 from Ghaffari and by forgiving $20,000 VIP owed from a previous loan to Tampa Capital Group, Hern loaned $120,000 to VIP pursuant to a secured and convertible promissory note ("VIP Note"), which he signed on December 22, 2000.  Df. Facts ¶ 10.  Robinson, on behalf of VIP, signed the VIP Note on December 28, 2000.  Id.  On the same day, Robinson signed a security agreement on behalf of VIP as well as a personal guarantee which guaranteed repayment of the VIP Note.  Id. ¶¶ 11, 12.  Importantly, Robinson signed these documents in the VIP office located in Orlando, Florida.  See Robinson Dep. at p. 34.

On February 27, 2001, Hern assigned the VIP Note, security agreement and personal guarantee to Global Source Ventures, an LLC, owned by Ghaffari, Tasker and Ghaffari's attorney, Edward Siegel.  See Assignment of Hern to Global Source Ventures; Df. Facts ¶ 16.  On April 16, 2001, the VIP Note was assigned by Global Source Ventures to Cap Source Ventures, an LLC located in Ohio owned solely by Ghaffari.  See Assignment by Global Source Ventures to Cap Source Ventures.  The VIP Note became due on March 31, 2001.  Siegel, on behalf of Cap Source Ventures, demanded payment from VIP on the VIP Note in two letters dated May 14, 2001 and June 7, 2001.  Df. Facts ¶¶ 19, 20.  However, having not been able to collect on the VIP Note, on May 26, 2006, Cap Source Ventures initiated a lawsuit against VIP,

Slider and Robinson ("Florida Litigation") in Florida demanding payment of the VIP note.  Id. at ¶¶ 21, 22.

At the same time, Ghaffari filed the instant suit in New Jersey to collect on the alleged loan to Hern.  The original Complaint alleged fraud in the inducement on the part of Hern. Specifically, Ghaffari alleged that the $100,000 he wired to Hern's bank account was a loan from Ghaffari to Hern and that Cap Source Ventures was unable to enforce the VIP Note against VIP in the Florida Litigation.  Id. at ¶ 23.  The Complaint further avers that the loan was to be repaid on March 31, 2001, at a rate of twelve percent interest per annum.  Pl. Compl. Filed 3/1/2006 ¶ 7.

Hern initiated a Third-Party Complaint in this case against VIP, Slider and Robinson which sought to enforce the VIP Note.  Df. Facts ¶ 28.  Thereafter, the relevant parties stipulated to dismiss the Florida Litigation, as well as Hern's Third-Party Complaint.  Id. at ¶ 29.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).   Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether

there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.   Conflict of Laws

As a threshold inquiry, the Court must first determine whether New Jersey or Florida law applies to this contract dispute.  A federal court "sitting in diversity must apply the conflicts of law principles of the forum state."  <u>Henry v. Richardson-Merrell, Inc.</u>, 508 F.2d 28, 31 (3d Cir. 1975).  Because New Jersey is the forum state, its conflict of law principles apply.  However, before adopting New Jersey's choice of law concepts to the instant contractual dispute, the Court must decide whether to apply the "governmental interest" test or the "most signficant relationship" test.[2]

Previously, in the context of contractual claims, the New Jersey Supreme Court adopted the "most significant relationship" test to resolve choice-of-law questions.  <u>State Farm Mut. Auto. Ins. Co. v. Simmons' Estate</u>, 84 N.J. 28, 34 (1980).  By contrast, in tort claims, the Court utilized the "governmental interest" test.  <u>See</u> <u>Veazey v. Doremus</u>, 103 N.J. 244, 247 (1986); <u>Fu v. Fu</u>, 160 N.J. 108, 118 (1999); <u>see also</u> <u>Agostino v. Quest Diagnostics Inc.</u>, 256 F.R.D. 437, 460 (D.N.J. 2009).  "Therefore, the choice of law analysis [in New Jersey] and resultant legal determinations often hinged upon a court's characterization of a plaintiff's claims."  <u>Id.</u> at 460.  Recently, in <u>P.V. v. Camp Jaycee</u>, the Supreme Court of New Jersey retired the traditional flexible governmental interest test and instead, endorsed the most significant relationship test to

---

[2]The Court notes that Hern applies the "governmental interest" test, while Ghaffari does not apply any test.

decide the choice-of-law question in claims that sound in tort.  P.V. v. Camp Jaycee, 197 N.J. 132 (2008).

Following Camp Jaycee, the Appellate Division recognized that the "most significant relationship" test has effectively replaced the "governmental interest" test as the guiding principle of New Jersey's choice-of-law analysis.  Watson v. Watson, 2009 N.J. Super. Unpub. LEXIS 964, at *5-6 (App. Div. Apr. 6, 2009) (the New Jersey Supreme Court has recently revisited the choice of law principles and it abandoned the governmental interest test and adopted in its place the significant relationship test); Schwartz v. Hilton Hotels Corp., 2009 U.S. Dist. LEXIS 55364 (D.N.J. Jun. 30, 2009); Intarome Fragrance & Flavor Corp. v. Zarkades, 2009 U.S. Dist. LEXIS 25793 (D.N.J. Mar. 27, 2009);  Agostino, 256 F.R.D. at 461 (the court applied the most significant relationship test to Plaintiffs' tort claims as well as to their breach of contract claim").

New Jersey's most significant relationship test consists of two prongs.  The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists.  Camp Jaycee, 197 N.J. at 143-44 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  Where there is no actual conflict, the analysis ends and the court applies the law of the forum state.  See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621, 917 A.2d 767 (2007).  The second prong of the most significant relationship test requires the Court to weigh the factors enumerated in the Restatement section corresponding to the plaintiffs' cause of action.  See Camp Jaycee, at 143-44, 962 A.2d 453.

### a.      Prong-One: Whether There Is An Actual Conflict

The first prong of the most significant relationship test requires the Court to determine whether there is an actual conflict between the laws of the states involved, see Camp Jaycee, 197 N.J. at 143-44, Erny, 792 A.2d at 1216, or whether a false conflict exists.  LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).  The conflict is determined by whether a "distinction" exists between the substance of the potentially applicable laws.  Camp Jaycee, 197 N.J. 132, 143.  Thus, here, the Court must determine whether a distinction exists between the relevant statute of limitations of Florida and New Jersey.

Under Fla. Stat. § 95.11, a "legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts" must be commenced within four years.  See Fla. Stat. § 95.11(k).  This section is applicable here because the parties do not dispute that no written instrument exists evidencing any obligation on the part of Hern; in other words, no document exists to indicate whether the transfer of the $100,000 from Ghaffari to Hern was a loan.  Each of the five Counts in Ghaffari's Complaint stem from his underlying assertion that the money he wired to Hern was a personal loan.  See e.g., Amended Compl. ¶¶ 27, 28, 29, 36, 42, 49, 54, 55. Thus, Ghaffari's claims are based on an unwritten instrument, or oral agreement, governed by § 95.11.

By contrast, under New Jersey law, actions at law for contracts, express or implied, "shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-1.[3]  Accordingly, the Florida statute requires a legal action to commence two

---

[3] The entire section states: Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express

years earlier than the New Jersey.  This important distinction is dispositive of Defendant's Motion.  Plaintiff claims the alleged loan was due to be repaid on March 31, 2001.  However, Plaintiff did not file his original Complaint against Defendant until March 1, 2006, more than four years later.  Under Florida law, Plaintiff's claim would be barred under the statute of limitations, but it would be timely under New Jersey law.  Thus, an actual conflict exists between the applicable Florida and New Jersey law and thus, the choice of law analysis shall proceed to the next prong.

### b.   Prong-Two: The Interest Each State has in Applying its Law

In light of an actual conflict, the Court must weigh the factors enumerated in the Restatement section corresponding to the Plaintiff's cause of action.  See Camp Jaycee, 197 N.J. at 143-44.  In evaluating the Restatement (Second) of Conflict of Laws, the Court finds that § 195 Contracts for the Repayment of Money Lent is most applicable to this dispute since this case hinges on an alleged loan from Ghaffari to Hern.  Section 195 states:

> the validity of a contract for the repayment of money lent and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that repayment be made, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Here, neither party claims that the alleged oral agreement contained a choice of law provision or a particular state where payment was required to be made.  Thus, the Court must

---

or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

This section shall not apply to any action for breach of any contract for sale governed by section 12A:2-725 of the New Jersey Statutes.

look to Section 6 of the Restatement, which provides the following factors:

> (a) the needs of the interstate and international systems
>
> (b) the relevant policies of the forum
>
> (c) the relevant policies of other interested states and the relative interests of those state in the determination of the particular issue
>
> (d) the protection of justified expectations
>
> (e) the basic policies underlying the particular field of law
>
> (f) certainty, predictability and uniformity of result
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6. The Court need not undertake an elaborate analysis of each of the seven factors since the New Jersey Supreme Court simplified the choice of law disputes by condensing the Restatement factors into four broader categories: (1) the competing interests of the relevant states, (2) the national interests of commerce among several states, (3) the interests of the parties in realizing justified expectations and achieving predictable results, and (4) the interests of judicial administration. Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999) (citing Pfizer, Inc. v. Empirs Ins., 154 N.J. 187, 196-99, 712 A.2d 634 (1998)).  Next, the Court will apply these factors.

To gauge the competing interests of the relevant states, the Court will "consider whether application of a competing state's law under the circumstances of the case 'will advance the policies that the law was intended to promote.'" General Ceramics v. Firemen's Fund Ins. Cos., 66 F.3d 647, 656 (3d Cir. 1995).  Under Florida law, the policy behind the statute of limitations, is to "prevent unreasonable delay in the enforcement of legal rights" and "to protect against the risk of injustice." BDI Constr. Co. v. Hartford Fire Ins. Co., 995 So. 2d 576, 578 (Fla. Dist. Ct. App. 3d Dist. 2008) (citing Hawkins v. Barnes, 661 So. 2d 1271, 1272 (Fla. 5th DCA 1995)).

Similarly, under New Jersey law, the purpose behind a statute of limitations is to "stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims" and to "'penalize dilatoriness and serve as a measure of repose.'" Ochs v. Federal Ins. Co., 90 N.J. 108, 112 (1982) (citing Farrell v. Votator Division of Chemetron Corp., 62 N.J. 111 (1975)).  In either state, the policy behind a statute of limitations is to prevent the litigation of stale or delayed claims and to prevent injustice by affording a defendant a fair opportunity to defend.  Simply stated, the application of either New Jersey or Florida statute of limitations will promote the policies of both states.

Based on the record in this case, the second factor, i.e., the national interests of commerce amongst the states, weighs in favor of Florida law.  For reference, the Court turns to the facts in Pfizer. There, the New Jersey Supreme Court determined that although Pfizer maintained a presence in New Jersey, and indeed some of the waste sites were located in New Jersey, because the waste sites at issue in some of the claims were located in six other states, applying New Jersey law to those claims would unduly burden interstate commerce. Pfizer, 154 N.J. at 202. Specifically, the Pfizer Court pointed out that at least with respect to the claims arising from the waste sites not in New Jersey, New Jersey lacked a dominant and significant relationship to those claims: "Concerning factor two, application of New Jersey's conflicting view of the pollution-exclusion clause would hinder the interests of commerce among the several states if that law were to be applied to determine a dispute with which New Jersey did not have a dominant and significant relationship." Id.

Here, guided by Pfizer, the Court focuses on the contacts New Jersey and Florida have to

the factual circumstances giving rise to Ghaffari's claims; specifically, the circumstances which surround the alleged oral agreement.  Indeed, New Jersey's minimal contacts to this dispute are that Hern resides in New Jersey and that Ghaffari wired the money to Hern's New Jersey bank account.  On the other hand, Florida has a stronger relationship to this dispute.  Ghaffari and Hern both worked for, and developed their relationship at, Global Access, a Florida corporation. The VIP Note, security agreement and personal guarantee were all signed by Robinson in Florida.  Tellingly, Cap Source Ventures commenced an action against Robinson and VIP in Florida to collect on the VIP Note.  Indeed, Ghaffari acknowledged that the alleged loan to Hern was for business purposes.  It also appears that Hern's lending of $120,000 to VIP was to further the business purpose.  More importantly, the VIP Note, according to its own terms in paragraph twelve, included a Florida choice of law provision.[4]  In short, Florida has the dominant significant relationship to this dispute and thus, its application would not hinder the national interests of commerce amongst the states.

Third, in evaluating the parties' reasonable expectations, the Court must first determine those expectations because neither party identified their positions since they never applied the most significant relationship test.  To the extent Ghaffari argues that he expected New Jersey law to apply because he transferred $100,000 to Hern in New Jersey, this expecation is belied by the fact that Ghaffari initiated his first lawsuit against VIP and its principals in Florida, not New Jersey.  More importantly, the draft Letter of Intent stated: "The undersigned, Matt Ghaffari, Andrew Tasker and Benjamin Hern herby agree to form an Ohio Limited Liability Company for the purpose of investing in [VIP]."  In light of that language, it was certainly Ghaffari's intent to

---

[4] The fact that this choice of law provision is recorded in writing is especially persuasive in light of the absence of any written agreement between Ghaffari and Hern.

conduct business with Hern in Florida, notwithstanding his current position that the alleged loan was only for personal purposes. Seemingly, Ghaffari's expectations have changed as a response to his dismissal of the Florida Litigation - he now expects New Jersey law to apply.

On the other hand, Hern's expectation that the alleged loan be governed by Florida law is sound because the series of transactions which ultimately led to the execution of the alleged loan took place in Florida. Moreover, Hern's business, Global Access, was located in Florida at the time the alleged loan was made, and both Ghaffari and Hern were employed by Global Access.

The fourth factor, the interests of judicial administration, requires "a court to consider whether the fair, just and timely disposition of controversies within the available resources of courts will be fostered by the competing law chosen. In other words, what choice of law works best to manage adjudication of the controversy before the court." Pfizer, 154 N.J. at 199. Neither Hern nor Ghaffari contend that the interests of judicial administration would be affected differently by applying one state's law over the other. As such, this factor remains neutral since the Court can manage the adjudication of this dispute regardless of whether Florida or New Jersey law applies.

In sum, in balancing the relevant elements of the most significant relationship test, the Court must bear in mind that it must apply the law of the state that has the strongest connection to the case. Camp Jaycee, 197 N.J. at 155. Taken together, the competing interests of Florida and New Jersey, the national interests of commerce among several states, the interests of the parties in realizing justified expectations and achieving predictable results, and the interests of judicial administration, the Court finds that on balance, Florida law applies to the ensuing issues of contract interpretation in this matter.

### B.     Statute of Limitations

Having determined that Florida's statute of limitation applies to the present case, Plaintiff's contractual claims are barred because the statute of limitations has run.  Plaintiff initiated this lawsit on March 31, 2006.  However, the statute of limitation period ended on March 1, 2005, four years after Plaintiff demanded payment on the alleged loan.  See Fishbein Family P'ship v. PPG Indus., 307 Fed. Appx. 624, 625 (3d Cir. 2009) ("Ordinarily, the statute of limitations for an action begins to run when all the elements of the cause of action are present, or, more plainly, 'from the moment of the wrong'") (quoting Almand Properties Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1190 (D.N.J. 1992)).  Hence, Defendant's summary judgment motion is granted in this regard.  See, e.g., Menoken v. McNamara, 304 Fed. Appx. 979, 981 (3d Cir. 2008) (Third Circuit affirming District Court's dismissal of Plaintiffs' claims because they were time barred by N.J.S.A. 2A:14-1); Lunn v. Prudential Ins. Co. of Am., 283 Fed. Appx. 940, 941 (3d Cir. 2008) (the same).

### IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.


Dated: July 15, 2009


   /s/ Freda L. Wolfson     
The Honorable Freda L. Wolfson,
United States District Judge

14